## CAMPBELL v. GLEDHILL et al.

Eastern Section. December —, 1931.

Petition for Certiorari denied by Supreme Court, March —, 1932.

Joe V. Williams, of Chattanooga, for appellant.

Cantrell, Meacham & Moon and Williams & Frierson, all of Chattanooga, for appellees.

SNODGRASS, J. There are other defendants whose interests were disposed of in the record as will appear from the chancellor's

opinion, but the contest involved in this appeal is between complainant and the bank. In the brief supporting the assignments it is said:

"Since the memorandum opinion deals with the facts of the case in detail, we shall assume that every statement of fact contained therein correctly reflects the testimony introduced, save and except such parts of the memorandum as we shall assail in our assignments of error."

The full text of the chancellor's opinion is set out beginning on page 137 of the record and concluding with an addendum preceding the final decree on page 154. We incorporate the same here simply by reference.

The chancellor gave a decree against Mrs. Gledhill in the sum of $2,340, together with interest thereon from September 28, 1928, and all costs of the cause except the costs adjudged against complainant incident to making said bank and the other defendants parties, dismissing the case as to them.

The assignments of error are as follows:

"I. There was no evidence to support the chancery court's finding and its decree that the defendant First National Bank of Chattanooga was guilty of no negligence or wrongdoing making it responsible to complainant in its delivering to Mrs. Mamie Gledhill the notes on either February 18, 1928, or September 28, 1928.

"II. The chancery court having found as a fact that it was not able to believe that Mrs. Rogers 'intended to give the notes' to Mrs. Gledhill, and having adjudged that she was liable to complainant administrator for the value of the notes in question, that court erred in failing to hold the defendant Bank was not also liable to complainant for the loss or conversion of said notes because, without the Bank's negligent act in turning over said notes to Mrs. Gledhill she would have had no opportunity to get possession of the notes, and thereby perpetrated the fraud as she did against Mrs. Rogers' estate.

"III. The chancery court erred in holding that Mrs. Gledhill was the agent of Mrs. Rogers on February 18, 1928, and apparently was acting within the scope of such agency when she withdrew said notes from the defendant Bank on February 18, 1928.

"The proof was undisputed—and the chancery court never found otherwise—that Mrs. Gledhill was a special agent authorized alone to sell Mrs. Rogers' house and lot in September, 1926, and collect the initial cash payment of $500 and take and deliver over to Mrs. Rogers the balance of the cash payment after deducting $250 for Mrs. Gledhill's real estate commission in effecting a sale, together with the 100 purchase money notes of Hickman Jones amounting to $3000. It is undisputed from that date, September 7, 1926, to February 18, 1928, that the defendant Bank did not claim to possess

knowledge that Mrs. Gledhill was continuing to act as Mrs. Rogers' agent. The only testimony the Bank offered on this point was by Mr. Stapp to the effect that he never had any notice of any kind from Mrs. Rogers that Mrs. Gledhill was no longer her (Mrs. Rogers') agent and not authorized to handle these notes.' (R. 132.)

"The proof offered through complainant's witnesses that Mrs. Gledhill was occasionally requested by Mrs. Rogers to get after Hickman Jones and have her keep the payments up, did not constitute her an agent, nor did it constitute a renewal of the agency to sell or collect, and defendant Bank offered no proof whatever that it had any knowledge of such requests or that it relied on such requests to establish a continuance of the agency of Mrs. Gledhill after Sept. 22, 1926.

"IV. The chancery court erred in holding the defendant Bank had no notice of the infirmity of Mrs. Gledhill's title to the notes in question.

"V. The chancery court erred in holding (a) that the notes in controversy and the alleged transfer or conveyance of the notes dated February 21, 1928, from Mrs. Rogers to Mrs. Gledhill (Stapp's Ex. B. R. 135) bore the genuine signature of the said Martha L. Rogers; and that court erred in holding (b) that even if Mrs. Rogers did sign her name on said notes then Mrs. Gledhill had the authority to afterwards place in typewriting above such signature on the notes to-wit, 'Pay to order Mamie M. Gledhill'; and that court erred in holding (c) that since one of said notes (to-wit, Note 22, due 22 months after date, filed as Exhibit B to Hickman Jones' deposition) showed without dispute that such typewriting was done after the making of the payee's signature, 'conceivably there might have been unintentional omission of this one note which was corrected.'

"In this the chancery court disregarded the fact that Mrs. Gledhill got these notes out of the bank, as she represented, 'to foreclose.' This contemplated her acting as an agent and if while acting as such agent she procured Mrs. Rogers' signature on the back of the notes for the purpose of foreclosing, but instead, as stated in effect by that court, she decided to perpetrate a fraud, then she had no power to forge a notation on the notes as to make them payable to her thereby vesting the title to the notes in her.

"VI. The chancery court erred in holding that the defendant Bank did not make itself liable when it let Mrs. Gledhill withdraw the notes from the Bank on February 18, 1928, because the notes on or about February 21, 1928, were returned to the Bank bearing Mrs. Rogers' endorsement on the back of each note and hence no "harm" was done to her.

"The harm resulted to her estate, because Mrs. Rogers never knew of the fraud which Mrs. Gledhill had perpetrated. The Chan-

cellor disregarded the 'harm' that came to Mrs. Rogers' estate; and disregarded the fact that the Bank, by improperly allowing Mrs. Gledhill to withdraw the notes, she was thereby given an opportunity to reap the benefit of all these notes except the five or six that were collected in Mrs. Rogers' lifetime.

"VII. The chancery court erred in not holding, in view of the facts proven, that the defendant Bank, without express authority from Mrs. Rogers or her authorized agent S. C. Rogers, alone had power to collect the notes in question.

"VIII. The chancery court erred in construing the language used by Mrs. C. H. Campbell in her telephone message to defendant Bank as being insufficient to put the Bank upon notice that the claim of Mrs. Gledhill to the notes here involved was fraudulent.

"IX. The chancery court erred in holding and decreeing that the special contract made between the defendant Bank and Mrs. Rogers and/or S. C. Rogers providing for a joint account of the proceeds of the notes in question was insufficient in law to constitute S. C. Rogers a party thereto, both as principal and as agent for his mother, Mrs. Martha Rogers. Said arrangement had the legal effect of authorizing S. C. Rogers to do all necessary acts relating to said joint account, including the vesture of title and interest in said notes, and because of such special arrangement which arose to the dignity of a contract between him and defendant Bank, it should not have delivered said notes to Mrs. Gledhill either on February 18 or September 28, 1928, without notice to the said S. C. Rogers or his consent thereto.

"X. The chancery court erred in construing said alleged transfer dated February 21, 1928 (Ex. B to Dep. Stapp, R. 135) as a valid transfer, and in refusing to hold it was void (a) for lack of delivery of the property therein sought to be conveyed, and (b) because not a gift inter vivos but was of a testamentary nature; and until it was so established and probated as a testamentary document, it could not pass title to the notes mentioned.

"XI. The chancery court erred in dismissing complainant's bill as to defendant First National Bank. . . ."

Our examination of the record leads us to concur in the results reached by the chancellor, and we are of the opinion that the weight of the evidence supports his conclusions.

While we think the special agency of Mrs. Gledhill ended when she first indorsed the name of Mrs. Rogers, the owner of the notes, on the back thereof to the bank for collection and thus delivered them to said bank, and that the bank wrongfully turned them over to Mrs. Gledhill on the 18th day of February, 1928, at which time there appears to have been no authority for such action by the bank, yet this appears not to have been the proximate cause of any loss thereon by reason of the fact that it appears, notwithstanding

such an unauthorized delivery, that the said notes came into the hands of the owner, Mrs. Rogers, at least after that date and before they were redelivered to the bank on February 23, but with a changed endorsement indicating their transfer to Mrs. Gledhill. We agree with the chancellor that the weight of the proof is that when they were redelivered to the bank they had an additional or different indorsement over the genuine signature of Mrs. Rogers. This is the most important element of evidence bearing upon this case. Had such signature been forged, a different result would have been effected; for in that event no reason would appear to have justified the bank for turning the notes back into the hands of Mrs. Gledhill either in the first instance or the second, for the bank in its dealing with the notes would have been acting at its own peril. But, having held that the signature over which was indorsed, ''Pay to order of Mamie M. Gledhill,'' was genuine, there must also be admitted its inevitable implications, and they are that if Mrs. Gledhill wrongfully procured them at the bank her agency to do so was ratified when having them in her possession Mrs. Rogers placed her genuine signature thereon and redelivered them to Mrs. Gledhill, for they were sent back to the bank by Mrs. Gledhill containing these indorsements. We think with the chancellor that this indorsement was fraudulently procured, but that there was nothing upon the face of it to indicate to the bank that there was an obligation upon its part to look further than the face of the transaction by which it became repossessed of the notes in which there appeared to be nothing to stamp it with suspicion.

As the chancellor found, Mrs. Rogers, though perhaps in a condition where she might be easily imposed upon, as doubtless she was when her signature was last obtained, was yet responsible, and in the absence of proof affecting the bank with notice of the real situation or of circumstances that would put it upon inquiry, she must be held to be the author of her own undoing as regards the estate she left when she again intrusted Mrs. Gledhill, as the presumption is she did, with the notes leaving an indorsement which enabled Mrs. Gledhill to perpetrate the fraud. We do not think there is any inconsistency either in the indorsements or the chancellor's holding in relation thereto. It was perfectly competent for Mrs. Rogers to have devoted the notes to the purpose directly evidenced by the last indorsement. At any rate, she must be held from the state of the record to have herself placed it within the power of Mrs. Gledhill to have thus imposed upon the bank, and there is no good reason to have overlooked this and have held the bank responsible for negligence in their first delivery to Mrs. Gledhill which was in no sense proximate. Of course, had the bank in any way participated in Mrs. Gledhill's fraud, the case of Manhattan Bank of Memphis, Tennessee, v. Walker, 130 U. S., 267, 9

S. Ct., 519, 32 L. Ed., 959, would have been an authority upon which the bank might have been held liable, had not the notes after their unauthorized delivery to Mrs. Gledhill been thereafter traced into the responsible possession of Mrs. Rogers, which culminated the original transaction and terminated the original relationship, and the bank if responsible at all must be held so by reason of any dereliction upon its part occurring thereafter.

It is insisted that before it parted with the possession of said notes after the death of Mrs. Rogers, the bank had notice through a telephone inquiry by Mrs. Campbell in regard thereto. This appears to us as a construction of the proof which the chancellor's analysis shows not to be supported. The inquiry appears to have been as to whether the notice of collection and deposit went through an unnecessary address, where evidently the mail had been redirected to Mrs. Rogers' proper address. This circumstance had attracted the attention of Mrs. Rogers and Mrs. Campbell while yet the collections were being sent to Mrs. Rogers. We do not think the inquiry was such, under the circumstances, as to affect the bank with any apprehension other than that Mrs. Rogers, who was entitled to receive the notice, had furnished her last proper address, and desired that it might be sent direct to it.

We do not think it necessary to determine the requisite of a withdrawal of a joint deposit made in the name of Mrs. Rogers "and/or" her son. There is no claim made of any improper withdrawal of any checking account. The notes deposited for collection were not held in any such account but in trust or as pledgee for the purposes of collection. And while the bank would have been held liable as indicated for any improper disposition that was not ratified or condoned, we think it was perfectly competent for Mrs. Rogers to have received them and thereafter made herself the responsible agent for their disposition which we find she did so far as the bank is or was concerned. We think the relationship of the parties and their previous dealing was such as to disarm suspicion rather than to create it and made the perpetration of the fraud easy if it did not suggest it.

Except as the foregoing may indicate any dissent from the views of the chancellor, we are in entire accord with his remaining conclusions, the results of which are in no way altered or disturbed. With due deference to the able brief that has been filed and the authorities therein cited, we think the chancellor's and our own analysis of the case certify that they are in no way inimical to the conclusions reached when rightly construed and applied.

All assignments are therefore overruled, and the decree of the chancellor affirmed, with costs against appellant except as they have been otherwise adjudged.

Portrum and Thompson, JJ., concur.